**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
LINDA D. CRAWFORD,

                                                        08 Civ 6293 (JFK)(FM)

                        Plaintiff,

            - against -

FRANKLIN CREDIT MANAGEMENT CORPORATION,
TRIBECA LENDING CORPORATION,
LENDERS FIRST CHOICE AGENCY, INC,
                        Defendants.
-----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 37 FED. R. CIV. P.**

Dated: New York, New York            **Chittur & Associates, P.C.**
       April 3, 2009                 286 Madison Avenue Suite 1100
                                     New York, New York  10017
                                     (212)  370-0447

                                     Attorneys for Plaintiff

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Defendants Failed to Produce Documents Specifically Ordered By the Court. . . . . . . . . 1

II.   Defendants Brazenly Violated Rule 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Defendants' Well-Established Obligations Under Rule 30(b)(6). . . . . . . . . . . . . 3

      B.    Defendants' Insouciant Violation: Ms. Olivera's Deposition. . . . . . . . . . . . . . . 4

            1.    Totally Unprepared to Address The Business Relationship At Issue. . . . . 4

            2.    Totally Unprepared to Address Loan Closing Practices and Procedures.. . 5

            3.    Totally Unprepared to Address Training, Instructions, Or Personnel Issues,
                  Even Those Concerning Mr. Koller. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            4.    Totally Unprepared to Address Electronic, Documentation Issues. . . . . . . 8

            5.    Totally Unprepared to Address the December 11, 2004 Transaction. . . . . 9

            6.    Totally Unprepared to Address Defendants' Licenses, Business Practices10

            7.    Failure to Produce Originals Of Mortgage and Underlying Note. . . . . . . 11

III.  Sanctions Against Defendants Are Appropriate and Warranted. . . . . . . . . . . . . . . . . . . 11

      A.    Defendants' Attempt to Dispute the Scope of Deposition Questions Is Frivolous.12

      B.    Defendants Repeatedly Disobeyed Deadlines and Court Orders. . . . . . . . . . . . . 13

      C.    Under Patterson, Defendants Should be Sanctioned. . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

*2W Product Corp. v. Y & P Wholesale, Inc.*, 2009 WL 29311, 4 (E.D.N.Y. Jan 5, 2009) . . . . . . 15

*Anthropologie, Inc. v. Forever 21, Inc.*, 2009 WL 690126, 3 (S.D.N.Y. Mar 13, 2009). . . . . . . 12

*Balaber-Strauss v. Tartaglione (In re Tartaglione)*,  2008 WL 336844, at *3 (S.D.N.Y. Feb.5, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 853 (2d Cir.1995). . . . . . . . . . . . . . . . . 12

*Bank of New York* v. *Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 151 (S D N Y 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Beck v. M&T Mortgage Corp. Et al*, No. 2:08-cv-03610-SJF-AKT (E.D.N.Y.). . . . . . . . . . . . . 2

*British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 2000 WL 713057, 9 (S.D.N.Y. June 2, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Capital Health Management Corp. v. Universal Financial Solutions, LLC*,  2008 WL 4489925, 3 (E.D.N.Y. Oct 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Century Pacific. Inc. v. Hilton Hotels Corp ,* 528 F.Supp.2d 206, 215 n.5 (S.D.N.Y. 2007) . . . 3

*Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067-68 (2nd Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Employers Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1120632, 1 (E.D.N.Y. Apr. 20, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Great White Bear, LLC v. Mervyns, LLC*, 2008 WL 2220662, 5 -6  (S.D.N.Y. May 27, 2008). . 14

*Gutman v. Klein*, 2008 WL 4682208, 13 (E.D.N.Y. Oct 15, 2008). . . . . . . . . . . . . . . . . . . . . . . 15

*Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y.2002). . . . . . . . . . . . . . . . . . . . . 12

*In re Durand*, 2008 WL 4282601, 7 (E.D.N.Y. Sep 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*L-3 Communications Corp.* v. *051 Systems, Inc.,* 2005 WL 712232, 1 (S.D.N.Y. Mar. 28, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*McGowan v. Dell Computer Corp.*, 2007 WL 2327063, 5 (M.D.Tenn. Aug 10, 2007) . . . . . . . 12

*Microsoft Corp. v. Computer Care Center, Inc.*, 2008 WL 4179653, 4 (E.D.N.Y. Sep 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mora v. Bockelmann*, No. 2007 WL 603410 at *2 (N.D.N.Y. Feb. 22, 2007). . . . . . . . . . . . . . 14

*Pal v. New York University*, 2008 WL 2627614, 3 (S.D.N.Y. Jun 30, 2008) . . . . . . . . . . . . 14, 15

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2nd Cir.1981). . . . . . . . . . . 15

*Reilly* v. *Natwest Markets Group Inc.,* 181 F.3d 253, 269 (2nd Cir.1999) . . . . . . . . . . . . . . . 3, 12

*Twentieth Century Fox Film Corp* v. *Marvel Enters.,* No. 01 Civ. 3016, 2002 U S. Dist. LEXIS 14682, *7 (S.D.N.Y. Aug. 8, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Union Realty Co., Ltd. v. Nationwide Mut. Ins. Co.*, 2005 WL 2436705, 2 (W.D.Tenn. Sep 29, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*,  2007 WL 915225, 2 (N.D.Cal. Mar 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>PRELIMINARY STATEMENT</u>

In accordance with the instructions of the Court in the conference of March 26, 2009, Plaintiff Linda Crawford files this formal motion seeking sanctions under Rule 37, Fed. R. Civ. P., against Defendants for sustained indifference to Court orders and deadlines.

As detailed below, Defendants failed to respond to Ms. Crawford's discovery requests timely, failed to produce documents <u>specifically ordered</u> by the Court, and brazenly violated Rule 30(b)(6). Defendants' nonchalance has frustrated a Court ordered schedule, and imposed significant,  unwarranted litigation expenses and attorneys' fees on Ms. Crawford - in addition to wasting judicial resources. Defendants' discovery infractions can only be characterized as wilful or, at the very least, grossly negligent. Accordingly, Ms. Crawford requests an order of preclusion against Defendants, and attorneys' fees and expenses under Rule 37.

<u>ARGUMENT</u>

This Court is familiar with the underlying facts, which need not be repeated here. The annexed attorneys' affirmation summarizes the developments relevant for present purposes.

As the transcript of the conferences of January 9 and February 2, 2009, reflect, Defendants failed to respond to Ms. Crawford's document requests, necessitating court intervention. Thereafter, they failed to comply with the Court's express direction to confer with us - failing to return our emails and phone calls - to attempt resolution of the discovery issues. Their subsequent violations are dealt with below.

I.      *Defendants Failed to Produce Documents Specifically Ordered By the Court*

By the order of February 2, 2009, this Court expressly directed Defendants to produce the documents by February 17th. Nevertheless, Defendants failed to produce several of the critical

1

documents ordered, including:

A.   Documents concerning business relationship "between and among defendants during the period 2004 through 2006, including any pool service agreements or revenue-sharing arrangements," Tr. F, 22-23;

B.   Compensation plan in effect for Koller and his superiors for 2004 - 2006.  Tr. F, 25.

C.   Legal proceedings <u>against Defendants</u>.  This Court had directed that:

> for the period from 2004 through the date this action was filed that the caption, including the docket number and the jurisdiction, of any lawsuits commenced against the defendants arising out of any mortgages or mortgage refinancings be produced.  So I'm carving out foreclosure actions brought against individuals or entities, but including suits against the defendants arising out of mortgages or refinancing. Tr. F, 27-28.

> Defendants produced <u>no</u> documents in response to this.  Instead, they provided a printout of mortgage foreclosure proceedings <u>commenced by Defendants</u> in NY State court - exactly contrary to the Court's express directions.  Such proceedings certainly exist[1].

D.   Defendants' licenses for 2004 - 2006, license applications, "and any correspondence related to disciplinary proceedings regarding those licenses," Tr. F, 30-31.  Defendants produced a New York City debt collection license for 2006 for Defendant Franklin, and a New York State mortgage banker license for Defendant Tribeca for 2006.  They produced no licenses for any other State or from any other authority (federal, State or local), no documents for 2004 or 2005, and no license applications for any period.

E.   Privilege Log - Tr. F, 31-32.  Defendants produced no privilege log.

While the Court addressed these issues in the March 26th conference, the significance of

this for present purposes is that (a) it is of a piece with Defendants' sustained discovery

infractions, which is required to be considered for present purposes; and (b) Court intervention

---

[1]*Beck v. M&T Mortgage Corp. Et al*, No. 2:08-cv-03610-SJF-AKT (E.D.N.Y.), where the 95-page, 515 paragraph complaint details an outrage akin to the one perpetrated on Ms. Crawford.  Defendants were clearly aware of *Beck*: Defense counsel referred to it during the 30(b)(6) deposition.

should not have been necessary at all.

II.    *Defendants Brazenly Violated Rule 30(b)(6)*

A.    <u>Defendants' Well-Established Obligations Under Rule 30(b)(6)</u>

"Under Rule 30(b)(6), when a party seeking to depose a corporation announces the

subject matter of the proposed deposition, the corporation *must* produce someone familiar with

that subject." *Reilly* v. *Natwest Markets Group Inc.,* 181 F.3d 253, 269 (2nd Cir.1999) (emphasis

added). As Judge Chin summarized, under 30(b)(6), Defendants had

> a duty to designate a deponent to testify "as to matters known or
> reasonably available to the organization." During deposition, the
> 30(b)(6) deponent presents the corporation's "position" on the
> topics. *Twentieth Century Fox Film Corp* v. *Marvel Enters.,* No.
> 01 Civ. 3016, 2002 U S. Dist. LEXIS 14682, *7 (S.D.N.Y. Aug. 8,
> 2002). . . Moreover, the deponent does not have to have personal
> knowledge to be a proper Rule 30(b)(6) witness, so long as he or
> she is prepared to provide information known to the company.
> *See* Id at *6-7 ("the duty to present and prepare a Rule 30(b)(6)
> designee goes beyond matters personally known to that designee
> or to matters in which that designee was personally involved")
> (quotations and citation omitted).

*L-3 Communications Corp.* v. *051 Systems, Inc.,* 2005 WL 712232, 1 (S.D.N.Y. Mar. 28,

2005); *accord, Century Pacific. Inc. v. Hilton Hotels Corp ,* 528 F.Supp.2d 206, 215 n.5

(S.D.N.Y. 2007) ("corporate deponent is obligated to be informed of information within the

knowledge and control of the corporation.").

This well-settled law and practice prevents corporations from sand-bagging their

adversaries. Hence, "Producing an unprepared witness is tantamount to a failure to appear,"

*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y.)

*(quoting Bank of New York* v. *Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 151 (S D

3

N Y 1997), and citing other cases).   Here, Defendants violated these well-settled obligations.

B.      Defendants' Insouciant Violation: Ms. Olivera's Deposition

Ms. Crawford issued a 30(b)(6) notice on February 2, 2009, for the Court-ordered deposition of February 26, 2009.  Chittur Aff. "Ex. A," Notice of Deposition.  Defendants never objected to any portion of the Notice or its scope.

On February 26, 2009, Defendants produced a designee, Ms. Melissa Olivera.  Ms. Olivera categorically stated that she was the "most knowledgeable" person to address every one of the items specified in our 30(b)(6) notice.  Chittur Aff. "Ex. B," Dep. Tr., 9-11 ("Tr. O"). However, she could testify to very few issues of relevance to the case; she could not address anything that transpired in 2004, or any of the events, or Defendants' policies, practices and procedures at the heart of this lawsuit.

1.      *Totally Unprepared to Address The Business Relationship At Issue*

Given the brazen racketeering scheme at issue, the relationship between Defendants and Lenders First Choice (the alleged settlement agent in the transaction at issue) is a major aspect of the case.  Nevertheless, Defendants' designee knew nothing about that relationship.

Ms. Olivera could not say how many loans had been handled by Lenders' First Choice for Defendants, Tr. O, 16-17.  She could not address how much money Defendants had paid Lenders First Choice (or *vice versa*), Tr. O, 16-17.

Moreover, while she stated that an agreement had existed between Tribeca and Lenders' Choice in 2004, she did not know where it was or why it was not made "available".  Tr. 90-91. She could say nothing about the arrangements between the corporate Defendants:

4

> Q.    Was there any agreement between Tribeca and Lenders
>       First Choice in 2004?
>             **********          **********
> A.    I don't know.
> Q.    Was there an agreement between Franklin and Lenders
>       First Choice in 2004?
> A.    I don't know.
> Q.    Was there an agreement between Tribeca and Lenders First
>       Choice at any time?
> A.    I don't know.
> Q.    Was there an agreement between Franklin and Lenders
>       First Choice at any time?
> A.    I don't know.

Tr. 92.

2.    *Totally Unprepared to Address Loan Closing Practices and Procedures*

Ms. Olivera did not know the " the practice and procedure for loan closing in 2004," Tr.

O, 20-21.  She had no knowledge of Defendants' corporate structure and hierarchy in 2004, Tr.

O, 27, or how many loan officers were there in 2004, Tr. O 30.  She did not know whether

anyone on behalf of Defendants conducted any analysis whatsoever before Defendants funded a

loan:

> Q.    Is there any analysis, whatsoever, that is done before
>       Tribeca decides to finance a transaction?
>       **********      **********  **********
> A.    I don't have the answer to that, since I don't have the loan officer
>       experience.
> Q.    Is it your understanding you're talking on behalf of Tribeca and Franklin?
> A.    Yes.
> Q.    Is it your understanding, that any financial analysis is done
>       before Tribeca advances money on a proposed transaction?
> A.    I'm not sure of that, since I don't lend.
> Q.    Is it your understanding, that Tribeca analyzes credit
>       applications, concerning potential borrowers before
>       advancing money?

5

> A.   I'm not sure of that, I don't have the lending experience.
>
> Q.   Do you know whether financial analysts look at a proposed transaction, and analyze it, before the transaction is financed?
>
> A.   I don't have the knowledge of that.
>
> Q.   Do you know whether the financial analyst conduct any investigation, in connection with the proposed transaction?
>
> A.   I don't have the knowledge of that.

Tr. O, 35-36.

Ms. Olivera also did not know the contents of Defendants' personnel files, or who kept payroll records or what they contained or where, 44-46.  In sum, she could not address most of the material issues at bar:

> Q.   So let's, to wrap this up, basically, you're not aware of what documentation was routinely created, what is the practice with respect to documentation by loan officers in 2004; is that correct?
>
> A.   Correct.
>
> Q.   So you're not aware of what documents were kept or retained in 2004, correct?
>
> A.   Correct.
>
> **********          **********   **********
>
> Q.   So you're not aware of anything -- let me rephrase the question.  You're not aware of what were the documentation practices -- strike that. What were the practices with respect to approval of pending loans in 2004; is that correct?
>
> A.   Correct.
>
> Q.   You can't answer any questions concerning what documents were produced, or created in 2004, in connection with pending transactions?
>
> A.   Correct.

Tr. O, 50-51.

6

3.      *Totally Unprepared to Address Training, Instructions, Or Personnel*

*Issues, Even Those Concerning Mr. Koller*

Likewise, Ms. Olivera did not know whether Defendants gave any training or instruction

sheets whatsoever to loan officers, Tr. 57-58.  She knew nothing about Mr. Koller, Defendants'

loan officer who is specifically named in the Amended Complaint as having made the

misrepresentations to Ms. Crawford:

> Q.      What was Mr. Koller's background, what is his educational
>         background?
>                 **********          **********
> A.      I cannot answer that, I don't know.
> Q.      Did Tribeca know whether he had any education at all?
>                 **********          **********
> A.      I can't answer that, I don't know.
> Q.      Did Tribeca know whether he had any experience, at all, as
>         a loan officer?
> A.      I don't know.
> Q.      Did Tribeca do any background check, on Mr. Koller,
>         before employing him?
>                 **********          **********
> A.      I don't know.
> Q.      Did Tribeca ask him for any kind of documentation prior to
>         employing him?
>                 **********          **********
> A.      I don't know, I did not work in that area.
> Q.      Did Tribeca interview him before appointing him as a loan
>         officer?
>                 **********          **********
> A.      I don't know.

Tr. O, 58-59.

Defendants produced 3 pages (exactly) concerning Mr. Koller's employment records: a

computer printout concerning his commission from the transaction at issue, his W-2 for 2004,

7

and his appointment letter (without the compensation plan expressly referenced in that very letter). Chittur Aff. "Ex. C."

4.     *Totally Unprepared to Address Electronic, Documentation Issues*

Ms. Olivera did not know who input information into Defendants' computer database about loan histories, Tr. 64-65.  She could not say who authorized disbursements allegedly made in connection with the transaction, *id*.

She did not know whether Defendants had the fax which Defendants' employee Koller had sent to Ms. Crawford, *id*. 70, or how Ms. Crawford's social security card came to be in Defendants' files, *id*.

Indeed, while the record reflected different appraised values for Ms. Crawford's home, she could not even specify the value placed by Defendants on the subject property:

> Q.     What value did Tribeca place on the property, for purposes of the transaction that's at issue?
>        **********          **********
> A.     I don't have an answer, I don't know.  I don't work in that lending division.

Tr. 73-74.  She did not know who the persons were whose signatures appeared on the alleged closing documents, *id*.  And she did not know anything about the compensation plan for Mr. Koller referred to in his appointment letter, Tr. 80.  She didn't know the procedure or record for mail sent to borrowers, *id*., 93.

Ms. Olivera did not know why Defendants had no notes of telephone conversations of the transaction at issue in their computers, or what their procedure was in this respect when the transaction took place in 2004:

8

Q.      So you're saying Tribeca has no record of phone
        conversations prior to January 19, 2005, in connection with
        this transaction?

A.      No, no records.  Everything would have been in this note
        system.

Q.      In the ordinary course of business, would you have
        expected Tribeca to have records, or notes of such phone
        conversation, prior to January --
                    **********          **********

A.      I don't know, I don't know.
                    **********          **********

Q.      So you don't whether it was a routine procedure, to keep
        notes of phone conversations, prior to January 2005?

A.      The reason being -- I do not -- and the reason being is,
        because I did not work in the lending division at that time,
        and I was not employed with Franklin at that time.

Q.      So you have no explanation of why there are no telephone
        entry notes, prior to that date of January 2005; is that
        correct?

A.      Correct.

Tr. O, 98-99.

        5.      *Totally Unprepared to Address the December 11, 2004 Transaction*

        The transaction of December 11, 2004, is at the heart of this case.  Ms. Crawford has

alleged that she gave specimen signatures for a bridge loan at the JFK airport; Defendants claim a

"closing" (presumably at JFK).  But Ms. Olivera was completely uninformed about the

transaction of December 11, 2004:

Q.      Would you be able to answer questions concerning the
        transaction of December 11th?

A.      No.

Q.      Would you be able to answer any questions concerning, if I
        were to point out, some discrepancies between different
        settlement statements, would you be able to address those?

A.      No.

9

Tr. 107.  In the same vein, she knew nothing about even who was involved in the transaction at issue:

> Q.   Was anybody, other than Mr. Koller, enrolled in this transaction in any manner?
> A.   For the initial transaction, I don't know.  I did not --
> Q.   Was there an underwriter involved in this transaction?
> A.   I'm not sure of that.
> Q.   Was there a broker involved in this transaction?
> A.   I believe no broker was involved.
> Q.   Was there a financial analyst involved in this transaction?
> A.   I'm not sure.
> Q.   Was there any office assistants involved in this?
> A.   I'm not sure of that.
> Q.   Were there any loan administrators involved in this?
> A.   I'm not sure of that.
> Q.   And your answer would be the same, if I asked you, with respect to recordkeepers and administrators?
> A.   Recordkeepers at the time of the origination, is that --
> Q.   Correct.
> A.   I don't know.

Tr. 110-111.

> 6.   *Totally Unprepared to Address Defendants' Licenses, Business Practices*

Ms. Olivera also did not know in what States Defendants lent money prior to 2006.  Tr. O, 114-15.  Defendants produced the list of lawsuits commenced <u>by</u> Defendants, and that too, only for New York , Tr. O, 116.  She did not know what licenses Defendants had or where:

> Q.   What licenses does Tribeca have?
> A.   For the State of New York --
> Q.   For anywhere?
> A.   -- to service.
> Q.   Anywhere, what are the licenses that it has?
> A.   I don't know.

**********          **********

10

> Q.    Is Tribeca licensed in New York for any purpose?
> A.    I don't know.
> Q.    Was it licensed in 2004?
> A.    Yes.
> Q.    For what purpose?
> A.    I don't know, I don't know.  I don't know the exact name of
>       the types of licenses.

Tr. O, 119-20.

With respect to the applications for licenses directed to be produced by this Court, she

had not asked for those copies, and did not know whether Defendants had copies of their license

applications:

> Q.    Did you also request copies of applications for licenses?
> A.    No, I didn't request that.
> Q.    Do you know whether they have copies of applications for
>       licenses?
> A.    I don't know that.

Tr. O, 120-21.

7.    *Failure to Produce Originals Of Mortgage and Underlying Note*

Finally, Defendants did not have the originals of the mortgage and the underlying note in

their files, and Ms. Olivera had no explanation for that:

> Q.    Do you have an explanation on why Tribeca doesn't have
>       the originals of the note and mortgage?
> A.    I don't have an explanation, it would have been included
>       with our collateral file.
> Q.    It should have been included in the collateral file, but it's
>       not?
> A.    It's not in the collateral file.
> Q.    And you don't know why?
> A.    I don't know why.

11

Tr. O, 129.

III.   *Sanctions Against Defendants Are Appropriate and Warranted*

Rule 37(b)(2)(A) provides for a range of discovery sanctions which may be imposed "for not obeying a discovery order."  "Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed." *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 853 (2d Cir.1995).

Sanctions are appropriate where noncompliance is a result of "willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y.2002); *see also Reilly*, 181 F.3d at 271 (finding that preclusive sanctions may be imposed for gross negligence); *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 WL 690126, 3 (S.D.N.Y. Mar 13, 2009).

A.   <u>Defendants' Attempt to Dispute the Scope of Deposition Questions Is Frivolous</u>

In the last Court conference, Defense counsel contended that deposition questions were beyond the scope of the Notice of Deposition.  To begin with, Defendants never raised any objections before - or even at - the deposition about the scope.  Thus, they are deemed to have waived all objections.  *See, e.g., British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 2000 WL 713057, 9 (S.D.N.Y. June 2, 2000) ("having failed to complain about any alleged overbreadth or burdensomeness, La Republica has waived such objections," citations omitted) (Maas, M.J.); *McGowan v. Dell Computer Corp.*, 2007 WL 2327063, 5 (M.D.Tenn. Aug 10, 2007) (objections should be raised "prior to the deposition or at the deposition itself").

More importantly, Defendants' objection that the questions were not in the notice was *prima facie* frivolous:

12

> [C]ourts have recognized that when a deponent is produced
> pursuant to Fed.R.Civ.P. 30(b)(6), the scope of questioning at the
> deposition is not defined by the notice of deposition--instead,
> Fed.R.Civ.P. 26(b)(1) defines the scope of discovery unless
> otherwise ordered by the court. *See* Charles Alan Wright & Arthur
> R. Miller, *8A Federal Practice and Procedure* § 2103 (2d ed. 1994
> & Supp.2005) (*citing Cabot Corp. v. Yamulla Enterprises, Inc.*,
> 194 F.R.D. 499 (M.D.Pa. 2000)). In fact, a notice of deposition
> cannot be used to limit what is asked of the designated witness, but
> rather, it "constitute[s] the minimum, not the maximum, about
> which a deponent must be prepared to speak." *Detoy v. City and
> County of San Francisco*, 196 F.R.D. 362, 366 (N.D.Cal.2000)
> (*citing King v. Pratt & Whitney, a Div. of United Technologies
> Corp.*, 161 F.R.D. 475 (S.D.Fla.1995)).

*Employers Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1120632, 1 (E.D.N.Y.

Apr. 20, 2006).  *Accord, Union Realty Co., Ltd. v. Nationwide Mut. Ins. Co.*, 2005 WL 2436705,

2 (W.D.Tenn. Sep 29, 2005); *UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*,

2007 WL 915225, 2 (N.D.Cal. Mar 23, 2007) ("the 'reasonable particularity' requirement of Rule

30(b) (6) cannot be used to limit what is asked of the designated witness at a deposition").

B.    Defendants Repeatedly Disobeyed Deadlines and Court Orders

Defendants have continually disregarded court orders and deadlines:

a.    They were required under the Scheduling Order to amend the
      pleadings by January 30, 2009.  They did not;

b.    They were required under the Federal Rules of Civil Procedure to
      respond to our discovery request by December 9, 2008.  They did
      not;

c.    They were required - by Court order of January 9, 2009 - to confer
      with us specifically with respect to each discovery request.  They
      did not;

d.    They were required - by Court order of February 2, 2009 - to
      produce all the ordered documents by February 17, 2009.  They did
      not;

e.    They were required - by Court order of February 2, 2009, and

13

under well-settled law under Rule 30(b)(6) - to produce a 30(b)(6) witness who could address relevant issues. They did not;

f.     They were required - under Local Rules - to discuss discovery issues in good faith with us. They did not;

g.     They were required to raise any discovery issues well ahead of the discovery cutoff. They did not; and

h.     They raised a discovery issue after discovery cutoff of March 6, 2009, without even acknowledging the untimely nature or proffering any explanation.

### C.    Under *Patterson*, Defendants Should be Sanctioned

Defendants have never bothered to proffer any explanation or excuse for their concatenation of discovery infractions. The conclusion is inescapable that Defendants' discovery infractions were neither substantially justified nor harmless. Ms. Crawford - a homeowner desperately trying to save her home - has been saddled with continued delays and unnecessary expenses and attorneys' fees.

Accordingly, sanctions are appropriate. For this purpose, as this Court observed, the

> court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)

*Pal v. New York University*, 2008 WL 2627614, 3 (S.D.N.Y. Jun 30, 2008) (Maas, M.J.).

*Accord, Great White Bear, LLC v. Mervyns, LLC*, 2008 WL 2220662, 5 -6  (S.D.N.Y. May 27, 2008) (Maas, M.J.).  *See also Mora v. Bockelmann*, No. 2007 WL 603410 at *2 (N.D.N.Y. Feb. 22, 2007).  "Severe sanctions, such as preclusion or dismissal, may be imposed when the failure to comply with a court order was due to willfulness, bad faith or fault on the part of the party refusing discovery." *Capital Health Management Corp. v. Universal Financial Solutions, LLC*,

14

2008 WL 4489925, 3 (E.D.N.Y. Oct 6, 2008) (striking Defendants' answer).

Here, Defendants have proffered no explanation hitherto for any of their infractions.  The first factor is thus against Defendants .

The second factor, Defendants' own testimony, is obviously of tremendous significance in this case, and the third factor, prejudice to Ms. Crawford is clear.  As in *Pal*, "Discovery in this matter is closed and . . . among other things, discovery would have to be reopened," 2008 WL 2627614, at 5.  In fact, this case is worse than *Pal,* because in *Pal*, the pretrial conference to "discuss NYU's proposed motion for summary judgment" had only been scheduled, *id*., here, such conference has already taken place and Judge Keenan has already set a briefing schedule for summary judgment motions.

Lastly, while "continuance is always a possibility," *id*., Defendants have not even acknowledged - let alone attempt to explain - their delays.  Absent such a showing, Defendants "should not be permitted to upset a discovery schedule which was extremely liberal and to which its adversary adhered."  *Pal*, 2008 WL 2627614, 6.  Accordingly, "a preclusion order is warranted," *id.  Accord, 2W Product Corp. v. Y & P Wholesale, Inc.*, 2009 WL 29311, 4 (E.D.N.Y. Jan 5, 2009) ("grossly negligent behavior that impedes discovery satisfies the 'fault' prong of the *Societe Internationale* triad and may justify the most severe penalties under Rule 37" *citing Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067-68 (2nd Cir.1979); *Gutman v. Klein*, 2008 WL 4682208, 13 (E.D.N.Y. Oct 15, 2008). (entering default judgment and awarding attorneys' fees and expenses)

In the context of sanctions, courts "consider the violation at issue in the context of that party's behavior throughout the entire case." *Balaber-Strauss v. Tartaglione (In re Tartaglione)*,

2008 WL 336844, at *3 (S.D.N.Y. Feb.5, 2008) (*citing Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2nd Cir.1981)).  Hence, "[S]anctions must be weighed in light of the full record in the case."  *In re Durand*, 2008 WL 4282601, 7 (E.D.N.Y. Sep 16, 2008) (*quoting Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068).  As another Court observed,

> a "continuing saga of dilatory conduct" will meet the threshold for entering a default judgment under Rule 37.  *U.S. Freight*, 716 F.2d at 955. The entry of a default judgment as a sanction is appropriate in the face of willful misconduct, "to achieve the purpose of Rule 37 as a credible deterrent 'rather than a paper tiger.' " *Update Art Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 70-71 (2d Cir.1988) . . . "Here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Sieck v. Russo*, 869 F.2d 131, 134 (2nd Cir. 1989)

*Microsoft Corp. v. Computer Care Center, Inc.*, 2008 WL 4179653, 4 (E.D.N.Y. Sep 10, 2008).

That is precisely the situation here: Defendants have a "continuing saga of dilatory conduct", with wilful misconduct.

<u>CONCLUSION</u>

Defendants should be precluded from presenting any evidence and/or their Answer should be stricken on grounds of sustained discovery misconduct.  In addition, as required under Rule 37(b)(2)(C), Defendants should be required to pay Ms. Crawford's attorneys' fees and expenses.

Dated:      New York, New York          **Chittur & Associates, P.C.**
            April 3, 2009

                                        _____/s/_____

                                        By:  Krishnan Chittur, Esq. (KC 9258)
                                        286 Madison Ave Suite 1100
                                        New York, NY 10017
                                        Tel: (212) 370-0447
                                        Fax: (212) 370-0465
                                        Email: kchittur@chittur.com
                                        Attorneys for Plaintiff

17