**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
LINDA D. CRAWFORD,                    :
                                      :
                   Plaintiff,  :
                                      :   08 Civ. 6293 (JFK)(FM)
        -against-                     :
                                      :
FRANKLIN CREDIT MANAGEMENT,            :   **OPINION AND ORDER**
CORPORATION, TRIBECA LENDING,          :
CORPORATION, AND LENDER'S FIRST        :
CHOICE AGENCY, INC.,                   :
                                      :
                   Defendants.  :
----------------------------------X


        **APPEARANCES**

            For Plaintiff Linda C. Crawford:

                Krishnan Chittur, Esq.
                CHITTUR & ASSOCIATES, P.C.

            For Defendants Franklin Credit Management Corporation
            and Tribeca Lending Corporation:

                Robert A. O'Hare, Jr., Esq.
                Richard A. Menchini, Esq.
                O'HARE PARNAGIAN LLP

                Martin C. Bryce, Jr., Esq.
                BALLARD SPAHR LLP


**JOHN F. KEENAN, United States District Judge:**

    Plaintiff Linda Crawford ("Crawford" or "Plaintiff") brings

this action against defendants Franklin Credit Management

Corporation ("Franklin") and Tribeca Lending Corporation

("Tribeca") (collectively, "Defendants"), asserting various

claims arising from Defendants' alleged operation of a
fraudulent mortgage refinancing scheme.  Another alleged
participant in the scheme, Lender's First Choice, Inc. ("First
Chioce"), was named as a defendant but was not served and has
not appeared in this case.  Tribeca and Franklin contest
Plaintiff's claims on the grounds that they committed no
fraudulent scheme and that Plaintiff's claims fail as a matter
of law.  Before the Court are Defendants' motions for summary
judgment against Crawford, and Crawford's cross motion for
partial summary judgment against Defendants.  For the reasons
stated below, Plaintiff's cross motion for partial summary
judgment is denied, Franklin's motion for summary judgment is
granted, and Tribeca's motion for summary judgment is granted.[1]

## I.  Subject Matter Jurisdiction and Venue

The Court has subject-matter jurisdiction over Plaintiff's
claims arising under the Racketeer Influenced and Corrupt
Organizations Act ("RICO Act"), 18 U.S.C. §§ 1961-1968 (2006 &
Supp. III),[2] the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.
§§ 1691-1691f, and the Truth in Lending Act ("TILA"), 15 U.S.C.
§§ 1601-1613, 1631-1646, 1648-1667f, because these claims arise

---

[1] Plaintiff has withdrawn her claims for breach of contract,
breach of implied covenant of good faith and fair dealing, and
violations of the Real Estate Settlement Procedures Act
("RESPA"), 12 U.S.C. §§ 2601-2617, 1831b (2006 & Supp. III).
(See Pl.'s Mem. Supp. Mot. Summ. J. 3, 3 n.2).
[2] All citations to the United States Code are to the 2006 Edition
and Supplement III (2009).

under the laws of the United States. <u>See</u> 28 U.S.C. § 1331.
Additionally, because Plaintiff's New York General Business Law,
fraud, and negligent misrepresentation claims relate to
Plaintiff's federal claims such that "they form part of the same
case or controversy under Article III of the United States
Constitution," 28 U.S.C. § 1367(a), these state-law claims are
within the Court's supplemental jurisdiction.

Venue is proper in the Southern District of New York
because the property that was the target of the alleged
fraudulent scheme is located in Rockland County in the State of
New York, which is in the Southern District. <u>See</u> 28 U.S.C.
§§ 112(b), 1391.

## II.  Background

The facts as discussed below are taken from the parties'
Local Civil Rule 56.1 statements and the declarations submitted
in connection with the instant motions.

### A.    The Parties

Linda Crawford is an African-American woman with a Bachelor
of Science degree from New York University.  She has worked as a
registered nurse and, since 1977, as a flight attendant for
American Airlines.  Crawford owns a home located at 40 Paradise
Avenue in the village of Piermont ("the Piermont Property"),
which is in Rockland County in the State of New York.  Between
September 2003 and February 2008, in addition to working as a

nurse and flight attendant, Crawford attended medical school at the Universidad Central del Este in the Dominican Republic and received her doctorate in medicine in February 2008.

In November 2004, Crawford held the Piermont Property subject to two mortgages.  The first mortgage--in the amount of $374,803.94--was held by Community Home Mortgage and later by Wells Fargo, and the second mortgage--in the amount of $49,756.00--was held by Chase Bank.  On November 8, 2004, Crawford voluntarily withdrew a bankruptcy petition filed in the U.S. Bankruptcy Court for the Southern District of New York pursuant to Chapter 13 of the Bankruptcy Code in August 2004. See Order of Dismissal, In re Linda Crawford, Ch. 13 Case No. 04-23323 (ASH) (Bankr. S.D.N.Y. Nov. 8, 2004), ECF No. 6. Around this time, Crawford was more than three months in arrears on her first mortgage and Community Home Mortgage had commenced a foreclosure action against her due to her default on her mortgage obligations.  Crawford alleges that in August 2004 the Piermont Property had been appraised at $780,000.00.

Tribeca is a New York corporation with its principal place of business in New Jersey, and is licensed by the State of New York Department of Banking as a Mortgage Banker.  At all times relevant to this action, Franklin, a Delaware corporation with its principal place of business in New Jersey, was Tribeca's parent company and was authorized to do business in New York.

-4-

First Choice has apparently ceased operations and filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Colorado in October 2008. See Chapter 11 Voluntary Petition, In re Lender's First Choice Agency, Inc., Ch. 11 Case No. 08-26829-MER (Bankr. D. Colo. Oct. 24, 2008), ECF No. 1.

**B.    The Loan Agreement**

In November 2004, with the Piermont Property noticed for a foreclosure sale, Crawford received a phone call from a Tribeca employee named Robert Koller.  Koller allegedly stated that he had been contacted by Crawford's attorney, Robert S. Lewis, and offered to prevent a foreclosure on the Piermont Property by refinancing it.  During that first phone call, Crawford and Koller allegedly discussed her full-time commitment to her medical studies, her reduced hours at American Airlines, and her inability to make monthly payments on a loan for at least one year.  Koller then allegedly represented to Crawford that the foreclosure on the Piermont Property could be prevented for one year--and her credit rebuilt--by taking out a one-year "bridge loan" of $35,000 at a rate of 10% with an option to "buy [the interest rate] down" to 9% by paying an additional "$1,000 . . . tagged onto the end of the bridge loan." (Chittur Decl. Supp. Mot. Summ. J. Ex. 2, Dep. of Linda Crawford 26:19-27:4, April 17, 2009).  According to Crawford, at the end of the first year of the bridge loan, "Tribeca would convert the bridge loan into

-5-

a 30 year fixed mortgage." (Pl.'s L. Civ. Rule 56.1 S. ¶ 13(e)).
It was Crawford's understanding that "[Tribeca] would pay and
satisfy" the two outstanding mortgages on the Piermont Property,
(2009 Crawford Dep. 43:19-20, 33:4), and that she would have to
repay these funds to Tribeca in the future, (2009 Crawford Dep.
45:24-25).  Though Crawford now asserts that she "never agreed
to or signed" a mortgage loan with Tribeca, (Pl.'s L. Civ. Rule
56.1 S. ¶ 3), Crawford understood that the proposed bridge loan
was to be secured "on the equity on [her] house," (2009 Crawford
Dep. 27:12-13).  Crawford alleges that Koller told her Community
Home Mortgage would foreclose on her quickly due to her race.

        According to Crawford, Koller called her again, on November
20, 2004.  During this second call, Koller allegedly repeated
the statements made on the original phone call and requested
that Crawford send him copies of her identification papers by
fax.  Crawford claims she informed Koller that she would not be
graduating from medical school until February 2008 and would not
have sufficient income to carry any loan or meet her living
expenses.  Crawford then faxed to Koller copies of her American
Airlines employee identification card, an e-mail from American
Airlines showing her current employment status, and her social
security card.

        On December 9, 2004, Koller allegedly called Crawford and
told her that he had to "verify" her signature.  Koller told

Crawford he would arrange for a representative to meet her at
Gate 8 of John F. Kennedy International Airport on December 11,
at a time when Crawford would be available between flights, and
asked that Crawford bring her Social Security card and
identification to the appointment.  On December 11, Crawford
allegedly met with a representative of Tribeca at JFK Airport.
Crawford testified during her deposition that when she met with
the representative she "signed one paper that was blank with her
signature . . . [t]hree to four times," "one paper that had a
line at the bottom to verify my signature" and "one paper with a
line on the top to verify my signature." (2009 Crawford Dep.
38:3-14).  Crawford alleges that Defendants used these signature
pages to fabricate a mortgage on Crawford's home in Rockland
County, and thereby misappropriated $355,440.06 in equity
Crawford held in her home at the time.

On or around December 20, Tribeca paid Crawford $7,196.52
by direct deposit.  On the same day, Crawford allegedly called
Koller inquiring about the "promised $35,000." (Pl.'s L. Civ.
Rule 56.1 S. ¶ 30).  During that phone call, Koller allegedly
accused Crawford of lying about the amount due on the pre-
existing mortgages, stated that the closing fees were higher
than he had expected, and assured Crawford that she would
receive copies of all the transaction documents in the mail.
Crawford claims never to have received any of the transaction

documents.  She maintains that Tribeca never made her aware that
she would be responsible for the closing costs and that she
never agreed to an adjustable rate mortgage.  Crawford admits
that she defaulted on the Tribeca loan.

Franklin argues that its only connection to this case is
that it was Tribeca's parent at the time of the alleged conduct.
Franklin claims that Robert Koller was not a Franklin employee
and that Tribeca alone made the loan to Crawford in December
2004.  With respect to Tribeca's loan to Crawford, Franklin
claims that it acted as a third-party loan servicer only, and
was involved neither in communicating with Crawford nor in the
substantive decision to offer her a loan.

Tribeca's description of the events that transpired in
November and December of 2004 differs sharply from that offered
by Crawford.  Tribeca acknowledges employing Koller as a loan
officer, but denies that Koller insinuated that Crawford would
be subjected to discrimination due to her race, arranged for
Crawford to meet with a Tribeca representative at JFK Airport on
December 11, 2004, or promised to mail the closing documents to
Crawford.  Tribeca alleges that the agent who met with Crawford
at JFK Airport in December 2004 was Anthony Decarolis, an
attorney who appeared on behalf of First Choice, which provided
settlement services for the transaction.  Anthony Decarolis

describes the alleged closing in an affidavit offered by

Tribeca:

> The execution of the loan documents took place in my
> car, which I had parked directly outside one of the
> JFK Airport terminals.  Ms. Crawford and I were the
> only persons present during the closing.  Ms. Crawford
> sat in the front passenger seat, and I described each
> of the documents while she briefly reviewed them.  It
> is my practice to offer certain explanations of the
> documents and loan terms, including the amount
> borrowed, the term, whether the loan is fixed or
> adjustable, and that the borrower has the right to
> rescind within three business days if the property is
> the borrower's primary residence.  I do not have any
> reason to believe that I deviated from this practice
> during the closing of Ms. Crawford's loan.  I did not
> instruct Ms. Crawford that she could not or should not
> read any of the documents nor did I prevent her from
> doing so.  I do not recall Ms. Crawford having any
> questions about any of the documents or expressing any
> concerns about signing them.

(Bryce Reply Decl. Supp. Mot. Summ. J. Ex. 1, Decl. of Anthony

Decarolis, Esq. ¶ 7, July 28, 2010).  Tribeca alleges that it

made a mortgage loan to Crawford in December 2004 in the amount

of $504,000.00, and that at closing it paid:  $459,102.62 to the

holders of Crawford's pre-existing mortgages; $35,050.86 in

closing costs; $1,250.00 to the Law Offices of Jordan Katz[3];

$1,400.00 for outstanding property taxes; and $7,196.52 to

Crawford. (See Bryce Decl. Supp. Mot. Summ. J. Ex. 5, U.S. Dep't

of Hous. and Urban Dev. Settlement S. 1, Dec. 11, 2004).  Since

December 2004, Defendants assert that they have paid an

---

[3] This payment was apparently an additional closing cost. (See
Tribeca's Mem. Supp. Mot. Summ. J. 3 ("[T]he remaining proceeds
were used to finance the closing costs of the loan.")).

additional $57,039.54 in real estate taxes for the Piermont
Property for 2006, 2007, 2008, and 2009, and $17,044.33 in
force-placed hazard insurance.

**C.   Defendants' Foreclosure Action and Plaintiff's Bankruptcy
       Petitions[4]**

On September 7, 2005, Tribeca commenced a foreclosure
action against Crawford in the Supreme Court of the State of New
York, Rockland County. Tribeca Lending Corporation v. Linda
Crawford et al., No. 6779/2005 (N.Y. Sup. Ct. Rockland Cnty.).
On August 10, 2006, after Crawford failed to answer Tribeca's
complaint, the Rockland County Supreme Court entered a Judgment
of Foreclosure and Sale.

On October 29, 2006, Crawford filed a petition in the
S.D.N.Y. Bankruptcy Court seeking relief pursuant to Chapter 13
of the Bankruptcy Code. See Voluntary Petition (Chapter 13), In
re Linda D. Crawford, Ch. 13 Case No. 06-22724 (ASH) (Bankr.
S.D.N.Y. Oct. 29, 2006), ECF No. 1.  In that petition,
represented by Robert S. Lewis, Esq., Plaintiff did not list any
of the claims asserted in this action as assets, see id. sched.
B, and represented that Franklin Credit held a secured interest

---

[4] To the extent they are not contained in the parties' supporting
declarations, the Court takes judicial notice of New York state
court and S.D.N.Y. Bankruptcy Court filings cited as records
"capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned." Fed. R.
Evid. 201(b)(2). See Retired Chicago Police Ass'n v. City of
Chicago, 7 F.3d 584, 609 n.30 (7th Cir. 1993) (taking "judicial
notice of the decisions of federal and state courts").

in the Piermont Property in the amount of $504,000.00 beginning
in December 2004, see id. sched. D.  At the time Crawford filed
her 2006 bankruptcy petition, a foreclosure sale of the Piermont
Property was scheduled for October 31, 2006. See id. Statement
of Financial Affairs, at 2.  On April 12, 2007, due to
Crawford's failure to conform to her Chapter 13 bankruptcy plan
and to appear at a confirmation hearing, the S.D.N.Y. Bankruptcy
Court dismissed her 2006 bankruptcy petition. See Order of
Dismissal, In re Linda D. Crawford, Ch. 13 Case No. 06-22724
(Bankr. S.D.N.Y. Apr. 12, 2007), ECF No. 12.  The parties agree
that Crawford made two payments owed on her Tribeca loan during
the pendency of the 2006 bankruptcy petition.

On June 24, 2007, Crawford filed another petition, again
seeking relief pursuant to Chapter 13 of the Bankruptcy Code in
the S.D.N.Y. Bankruptcy Court. See Voluntary Petition (Chapter
13), In re Linda D. Crawford, Ch. 13 Case No. 07-22583 (ASH)
(Bankr. S.D.N.Y. June 24, 2007), ECF No. 1.  In the 2007
bankruptcy petition, represented by the Law Offices of Allen A.
Kolber, Esq., Crawford acknowledged that the Piermont Property
was held subject to a mortgage held by Franklin in the amount of
$598,428.91 that had been incurred on December 11, 2004. See id.
sched. D.  During the pendency of the 2007 bankruptcy petition,
Crawford commenced an adversary proceeding against Franklin,
Tribeca, and First Choice, asserting that "[o]n or about

December 11, 2004, [Crawford] obtained a mortgage refinance from F[ranklin]/T[ribeca]," and that Franklin and Tribeca had "advised [Crawford] that she would be able to cash out $35,000.00 from the refinance and use those funds to pay the mortgage and avoid foreclosure."  Crawford claimed violations of TILA, ECOA, RESPA, and New York Gen. Bus. Law § 349. See Complaint ¶¶ 9, 18, 23-47, Crawford v. Franklin Credit Mgmt. Corp. (In re Linda D. Crawford), Ch. 13 Case No. 07-22583 (ASH), Adv. No. 07-08323 (ASH) (Bankr. S.D.N.Y. Dec. 7, 2007), ECF No. 1.  The 2007 bankruptcy petition was eventually dismissed due to Crawford's failure to comply with the terms of her Chapter 13 bankruptcy plan, see Order Dismissing Chapter 13 Case, In re Linda D. Crawford, No. 07-22583 (ASH) (Bankr. S.D.N.Y. July 9, 2008), ECF No. 27, and the adversary proceeding was later dismissed by the S.D.N.Y. Bankruptcy Court "without prejudice" on July 16, 2008, see Order Dismissing Adversary Proceeding, Crawford v. Franklin Credit Mgmt. Corp. (Bankr. S.D.N.Y. July 16, 2008), ECF No. 17.

**D.  Procedural History of this Case**

On July 11, 2008, Crawford commenced the instant action in this Court, asserting many of the same claims that had been asserted in the adversary proceeding against Tribeca, Franklin, and First Choice in the S.D.N.Y. Bankruptcy Court.  This case was referred to the Hon. Frank Maas, United States Magistrate

Judge, for scheduling, discovery, non-dispositive pretrial motions, and settlement.  During discovery, a number of disputes arose between the parties, and Crawford moved before Magistrate Judge Maas to strike the Defendants' answer and for the imposition of sanctions for noncompliance with Magistrate Judge Maas's discovery order. See Crawford v. Franklin Credit Mgmt. Corp., 261 F.R.D. 34, 36 (S.D.N.Y. 2009).  Crawford argued that Defendants had failed to produce an adequately prepared witness for a deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, had withheld allegedly responsive documents, and had not provided an adequate privilege log with respect to certain e-mails. Id. at 38-43.  On July 17, 2009, Magistrate Judge Maas ordered Defendants to disclose a chain of e-mails over Defendants' claim of attorney-client privilege and awarded Crawford attorneys' fees "reasonably related" to a March 2009 conference necessitated by Defendants' failure to comply with certain discovery directives, but otherwise denied the relief requested by Crawford. Id. at 43-44.  The discovery period was subsequently extended for limited purposes until February 5, 2010, and later to April 9, 2010.

In March 2010, Plaintiff submitted a letter-brief to Magistrate Judge Maas, again requesting sanctions against Defendants.  On March 15, 2010, Magistrate Judge Maas ordered Defendants to respond to the letter brief and denied Defendants'

requests for additional discovery.  Defendants filed an
objection to Magistrate Judge Maas's March 15 Order, however
both of these matters were resolved without the Court's
intervention; no further sanctions have been imposed against
Defendants and Magistrate Judge Maas's decision to allow
Defendants to depose Crawford for three additional hours mooted
Defendants' objection to his March 15 Order.

       With discovery complete, on September 9, 2010, the instant
motions were fully briefed.  The Court subsequently received
letters from counsel for Franklin and Tribeca on December 29,
2010, March 8, 2011, and March 11, 2011, and from counsel for
Crawford on January 3 and March 9, 2011.  These letters informed
the Court of developments in the New York state courts--
discussed below--and set forth legal arguments relating to these
developments.  In view of the Court's ruling on Defendants'
motion for summary judgment, the legal arguments set forth in
these letters are not relevant.

**E.    Appeal from the Rockland County Supreme Court Judgment**

       In September 2008, during the pendency of this action,
Crawford moved the Rockland County Supreme Court to vacate the
default judgment entered by that court in August 2006.  Crawford
argued that she had not been properly served, that her default
was excusable, that Tribeca had committed fraud on the court,
and that she had a meritorious defense to the foreclosure

action. Tribeca Lending Corp. v. Crawford, No. 6779/2005, slip

op. at 2 (N.Y. Sup. Ct. Rockland Cnty. Nov. 20, 2009).

    Crawford argued that at the time Tribeca allegedly served

her with a notice of the foreclosure action in Rockland County

Supreme Court, she was residing in the Dominican Republic, and

that therefore Tribeca's purported service pursuant to Section

308(2) of the New York Civil Practice Law and Rules was

defective.  Section 308(2) requires, among other things, the

delivery of "the summons within the state to a person of

suitable age and discretion at the actual place of business,

dwelling place or usual place of abode of the person to be

served and . . . mailing the summons to the person to be served

at his or her last known residence." N.Y. C.P.L.R. 308(2)

(McKinney 2010).  Tribeca argued in response that Crawford had

represented the Piermont Property as her primary residence

numerous times, and that she had appeared in the foreclosure

action through her attorney, Robert Lewis.  Crawford attested

that Lewis had not been authorized to appear in the foreclosure

action, and that she never received notice of the action.

Tribeca Lending Corp. v. Crawford, No. 6779/2005, at 2.

Confronted with the factual question of whether Crawford had

appeared through counsel in the foreclosure action, the Rockland

County Supreme Court discounted testimony Crawford had offered

and held unequivocally that "Crawford did, in fact appear

through counsel in [the foreclosure action], thereby waiving the affirmative defense that jurisdiction had not been obtained over her person." Id. at 5.

Though the Rockland County Supreme Court declined to grant Crawford's motion to vacate the default judgment, that court took notice of the allegations in this action and, holding that "it would be a travesty of justice if [Crawford] was successful in [the S.D.N.Y.] action, only to have lost her home" in the foreclosure action, stayed enforcement of the judgment. Id. at 6. The Rockland County Supreme Court suggested that it might consider revoking the entry of default against Crawford, if discovery or trial testimony in her federal suit should reveal proof of her allegations of fraud. Id.

Tribeca appealed, and the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, reversed the Rockland County Supreme Court's imposition of a stay. Tribeca Lending Corp. v. Crawford, 79 A.D.3d 1018, 1020, 916 N.Y.S.2d 116, 118 (App. Div. 2010). The Second Department held that the Rockland County Supreme Court had "improvidently exercised its discretion in, sua sponte, staying enforcement of the judgment of foreclosure and sale pending the determination of a subsequently-commenced federal action," given that the foreclosure action "and the federal action [did] not share 'complete identity of parties, claims, and reliefs sought.'" Id.

-16-

at 1018, 916 N.Y.S.2d at 118 (quoting <u>Green Tree Fin. Servicing</u>

<u>Corp. v. Lewis</u>, 280 A.D.2d 642, 643, 720 N.Y.S.2d 843, 844 (App.

Div. 2001)).  Crawford appealed the Appellate Division's

decision, but her motion for leave to appeal to the New York

Court of Appeals was denied by that court. <u>Tribeca Lending Corp.</u>

<u>v. Crawford</u>, No. 2011-99, 2011 WL 589741, at *1 (N.Y. Feb. 22,

2011).

### III.  Discussion of Plaintiff's Requests for Adverse Inferences

Before addressing the parties' motions for summary

judgment, the Court first addresses Plaintiff's arguments

concerning the imposition of adverse inferences on certain

factual issues, because the Court's rulings on these arguments

may determine if any "issues of disputed fact" are "material" to

the parties' motions. Fed. R. Civ. P. 56(a).

Plaintiff argues that Defendants' conduct throughout the

course of this litigation has prevented the discovery of

relevant evidence and that Plaintiff is entitled to adverse

inferences with respect to a number of disputes of fact.  When a

party fails to produce discoverable material without a valid

claim of privilege or other excuse, "a district court has broad

discretion in fashioning an appropriate sanction." <u>Residential</u>

<u>Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir.

2002).  In addition to protecting individual litigants, "Rule 37

sanctions serve other functions unrelated to prejudice suffered by individual litigants." Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010). These purposes include:  ensur[ing] that a party will not benefit from its own failure to comply," "obtain[ing] compliance with the particular order issued," and "serv[ing] a general deterrent effect on the case at hand and on other litigation, provided that party against whom they are imposed was in some sense at fault." Update Art, Inc. v. Modlin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988); see also Burrell v. American Telegraph & Telephone Corp., 282 Fed. App'x 66, 67-68 (2d Cir. 2008) (holding that the district court "did not clearly err" in dismissing an action for failure to comply with discovery orders where the plaintiff "was on notice of the possibility of dismissal" and where lesser sanctions had proven ineffective). However, an adverse inference is a harsh penalty, especially where it could preclude a party from presenting otherwise valid legal arguments. See Friends of Animals Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997) (per curiam) (recognizing that the dismissal of an action as a sanction for discovery violations "is . . . a severe sanction that should not be lightly imposed").  When seeking an adverse inference as a sanction for the wrongful withholding of evidence, one must show:

> (1) that the party having control over the evidence
> had an obligation to timely produce it; (2) that the
> party that failed to timely produce the evidence had
> "a culpable state of mind"; and (3) that the missing
> evidence is "relevant" to the party's claim or defense
> such that a reasonable trier of fact could find that
> it would support that claim or defense.

Scott v. City of N.Y., 591 F. Supp. 2d 554, 565 (S.D.N.Y. 2008)

(quoting Residential Funding, 306 F.3d at 107).

   Plaintiff seeks an adverse inference with respect to a
number of factual issues.  Plaintiff claims that Defendants
stifled her attempts to obtain discoverable information by
refusing to designate a Rule 30(b)(6) witness to address the
transactions with Crawford, and by failing to produce documents
related to the employment of Robert Koller, to the business
relationship between Crawford and Franklin, or to the guidelines
or uniform procedures concerning origination, financing,
underwriting, or review of mortgage transactions.  Due to
Defendants' allegedly defective performance of its discovery
obligations, Plaintiff asks that the Court assume for the
purposes of these motions that her account of the loan
transaction with Franklin is truthful, that Franklin was a full
participant in Tribeca's dealings, and that Defendants were
conducting a fraudulent mortgage lending scheme by, in part,
recklessly failing to keep records.

   Plaintiff has not adequately shown that Defendants acted
with culpable mental states such that Plaintiff is entitled to

any adverse inference.  First, an adverse inference against
Franklin for its alleged failure to produce documentation about
Koller's employment history is unwarranted in light of the
testimony indicating that Koller was an employee of Tribeca and
not of Franklin. (Bryce Reply Decl. Supp. Mot. Summ. J. Ex. 2,
Decl. of Robert Koller ¶ 1, August 13, 2010).  Even assuming for
the sake of argument that Tribeca withheld information about
Koller's employment, the Court may not fairly hold an adverse
inference against one defendant for the failure of another to
provide relevant information.  Second, an adverse inference
against Defendants for failure to produce a witness
knowledgeable about Crawford's specific transaction would be
inappropriate in light of Tribeca's representations that the
relevant persons, Robert Koller and Anthony Decarolis, were
either no longer employed by Tribeca at the time of the
deposition requests or had never been employed by Tribeca.  An
adverse inference would also be unwarranted in light of
Crawford's own failure to obtain the requested discovery by
other available means, such as by issuing a subpoena for
Koller's or Decarolis' deposition.  Third, Magistrate Judge Maas
has already addressed the issue of the lack of documentation
about the relationship between Franklin and Tribeca. Crawford v.
Franklin Credit Mgmt. Corp., 261 F.R.D. at 40 ("Absent [proof
that Defendants have misrepresented the true state of affairs],

the Court cannot grant relief under Rule 37(b) based on mere supposition that its order has been violated."). Magistrate Judge Maas's ruling on this point applies with equal force on the record before the Court. Finally, the adverse inference requested by Crawford with respect to Defendants' alleged failure to produce documents relating to guidelines or uniform procedures concerning origination, financing, underwriting, or review of mortgage transactions is unwarranted in light of the particular claims asserted in this case, which primarily turn on an accusation of deliberate fraud.

In support of its argument that an adverse inference is warranted in this case, Plaintiff cites one decision of the Second Circuit, In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 490 F.3d 99 (2d Cir. 2007), and two prior cases in the Southern District, Greenburgh No. Eleven Sch. Dist. v. Sequeira, No. 94 Civ. 6751 (VLB), 1994 WL 631247, at *1 (Nov. 10, 1994), and MacGuffie v. Hickcox, No. 94 Civ. 5316 (VLB), 1994 WL 702739, at *1 (Dec. 12, 1994). None of these cases support Plaintiff's claim of entitlement to an adverse inference. In Greenburgh, the Court itself requested information from both the plaintiff and defendant and then advised the parties that the Court may impose an adverse inference sanction as a penalty for failure to provide relevant information. Greenburgh, 1994 WL 631247, at *1. Likewise, in MacGuffie, the Court did not impose

any adverse inference sanction, but rather in ordering the parties to produce additional evidence, warned the parties that "[i]f any information requested . . . normally available to a party is not submitted, an adverse inference may be drawn unless an adequate explanation for its unavailability is provided." MacGuffie, 1994 WL 702739, at *1.  Both Greenburgh and MacGuffie involved mere warnings of the possibility that the Court might impose an adverse inference, and neither case sets forth any criteria for determining what conduct actually warrants discovery sanctions differing from the Scott v. City of N.Y. factors listed above.  In In re Air Crash at Belle Harbor, the Second Circuit discussed an exception to the normal rule that discovery orders are interlocutory--and hence not within a court of appeals' appellate jurisdiction--where the order imposes an adverse inference against a litigant. 490 F.3d at 104 n.5.  In re Air Crash at Belle Harbor does not support Crawford's contention that an adverse inference is warranted in this case. As discussed above, Defendants have explained the absence of the documents demanded by Crawford as well as their inability to produce certain witnesses for deposition.  Therefore, in deciding this motion, the Court will not impose an adverse inference against Defendants.

### IV.   Discussion of the Motions Before the Court

**A.    Legal Standard**

Summary judgment is appropriate where "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if, on the evidence relevant
to that dispute, "a reasonable jury could return a verdict for
the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
242, 248 (1986).  A fact is "material" if it "might affect the
outcome of the suit under the governing law." <u>Id.</u>

In determining whether there is a genuine dispute as to any
material fact, "courts must resolve all ambiguities, and credit
all factual inferences that could rationally be drawn, in favor
of the party opposing summary judgment." <u>Roe v. City of
Waterbury</u>, 542 F.3d 31, 35 (2d Cir. 2008).  A district court is
not, however, required to engage in speculation on behalf of the
non-moving party.  On a motion for summary judgment:

> [t]he movant has the burden of showing that there is
> no genuine issue of fact, but the [non-movant] is not
> thereby relieved of his own burden of producing in
> turn evidence that would support a jury verdict.  Rule
> 56[(c)(1)] . . . provides that a party opposing a
> properly supported motion for summary judgment may not
> rest upon mere allegations or denials of his pleading,
> but must set forth specific facts showing that there
> is a genuine issue for trial.

<u>Liberty Lobby</u>, 477 U.S. at 256.  A party may not "rely on mere
speculation or conjecture as to the true nature of the facts to

-23-

overcome a motion for summary judgment." <u>Knight v. U.S. Fire</u>
<u>Ins. Co.</u>, 804 F.3d 9, 12 (2d Cir. 1986).

**B.   Plaintiff's Cross Motion for Partial Summary Judgment**

    Plaintiff moves for partial summary judgment with respect
to the issue of Defendants' liability.  There are genuine
disputes of fact material to at least one element of each of
Plaintiff's claims, and therefore Plaintiff's motion is denied.

**1.   RICO Act Claims**

    Plaintiff contends that Defendants committed substantive
RICO Act offenses, in violation of 18 U.S.C § 1962(c), and
conspired to violate the RICO Act, in violation of 18 U.S.C.
§ 1962(d).  Civil RICO Act claims have three elements:  "(1) a
violation of the RICO statute . . . ; (2) an injury to business
or property; and (3) [causation of the injury] by the violation
of Section 1962." <u>Spool v. World Child Int'l Adoption Agency</u>,
520 F.3d 178, 183 (2d Cir. 2008).  Furthermore, "[t]o establish
a substantive RICO violation, a plaintiff must show a 'pattern
of racketeering activity,' . . . and to establish a RICO
conspiracy, a plaintiff must show a conspiracy to commit a
substantive RICO violation." <u>Id.</u> (citing 18 U.S.C. § 1962(a)-
(d)).  To sustain a motion for summary judgment, "[a] party
asserting that a fact cannot be . . . genuinely disputed must
support the assertion by . . . citing to particular parts of
materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

Crawford alleges that Franklin and Crawford, in the course of operating a racketeering enterprise, committed several RICO predicate acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343. The alleged acts of mail fraud involved the transmission of letters purporting to be monthly invoices for "installment payments on the alleged mortgage loan," and default notices as well as litigation documents and notices related to the Defendants' foreclosure action. (Pl.'s L. Civ. R. 56.1 S. ¶ 73(c)(i)-(ix)). The alleged acts of wire fraud involved phone calls between Koller and Crawford and the entry of adverse entries in Crawford's consumer credit report indicating that she was delinquent in her mortgage payments. (Pl.'s L. Civ. R. 56.1 S. ¶ 74(c)(i)-(vii). Plaintiff asserts that these acts were "fraudulent" because they were committed for the purpose of "obtaining money or property by means of false or fraudulent pretenses, representations, or promises." (Pl.'s L. Civ. R. 56.1 S. ¶ 73(a), ¶ 74(a)). However, whether any of these acts were fraudulent turns on whether Crawford's allegation that Franklin and Tribeca fraudulently fabricated the mortgage on the Piermont Property, because the injury purportedly caused by the predicate acts was the creation of a wrongful lien on Crawford's home. (Pl.'s Mem. Supp. Mot. Summ. J. 19). Tribeca and Franklin vigorously contest Crawford's account of the transaction and have offered the sworn declarations of Robert Koller and Anthony

-25-

Decarolis challenging the same.  Therefore, there is a genuine
dispute of fact on the issue of whether Defendants committed any
RICO predicate acts.

Crawford also alleges that Defendants conspired to violate
the RICO Act.  Such a claim requires a showing that the alleged
participants agreed to participate "'in a charged enterprise's
affairs' through a pattern of racketeering, 'not a conspiracy to
commit predicate acts.'" United States v. Pizzonia, 577 F.3d
455, 463 (2d Cir. 2009) (quoting United States v. Persico, 832
F.2d 705, 713 (2d Cir. 1987)).  In this case, Crawford has
produced no evidence unequivocally showing that Defendants
agreed to engage in a RICO enterprise through a pattern of
racketeering activity, but relies on admittedly circumstantial
evidence to make her case.  The only undisputed connections
between Tribeca and Franklin--Franklin's ownership of Tribeca,
Franklin's operation as a loan servicer for Tribeca, and their
shared office space and common employees--do not establish that
the two formed a RICO conspiracy.  Even if a reasonable finder
of fact could infer "a common purpose and plan . . . from [the]
circumstances," United States v. Hamilton, 356 Fed. App'x 345,
352 (11th Cir. 2009) (quotation omitted), a reasonable finder of
fact could certainly draw the opposite inference and conclude
from the record presented that Tribeca and Franklin had a lawful
commercial relationship that did not include an agreement to

participate in a racketeering enterprise.  Therefore, Plaintiff
is not entitled to summary judgment on her RICO conspiracy
claims.

    **2.   TILA Claims**

    Plaintiff contends that Franklin and Tribeca violated TILA
by failing to deliver all material disclosures required by TILA,
that Defendants violated TILA by refusing to terminate her
mortgage after Crawford delivered a notice of cancellation, and
that she has a continuing right to rescind the loan agreement
with Tribeca.  TILA requires a creditor to provide information
"clearly and conspicuously, in accordance with regulations of"
the Board of Governors of the Federal Reserve System when
entering into a credit transaction with a consumer. 15 U.S.C.
§ 1632(a).  The parties do not contest what disclosures TILA
requires.  Rather, the parties take competing positions with
respect to what documents were given to Crawford during the
closing at JFK Airport in December 2004.  Any of Crawford's
claims under TILA depend ultimately on what information Crawford
was provided by Tribeca or the settling agent, First Choice, in
December 2004.  From the record before the Court, a reasonable
finder of fact could credit the testimony of Anthony Decarolis
and infer that Crawford was provided all of the documentation
required by TILA on December 11, 2004.  Because such a finding
would render all of Plaintiff's TILA claims deficient as a

-27-

matter of law, the Court denies Plaintiff's motion for summary judgment with respect to these claims.

**3.   ECOA Claim**

In her Amended Complaint, Crawford alleges that Defendants violated ECOA by discriminating against Crawford on the basis of "race, color, religion, and/or national origin" by failing to provide an application process, misrepresenting material facts about the closing costs of the transaction and the interest rate that would be charged on the transaction, forging her signature on mortgage-related documents, and "seeking information about Crawford's race, color, religion, and/or national origin." (Pl.'s Am. Compl. ¶ 83).  In her instant cross motion for partial summary judgment, however, Defendant has abandoned any theory of actual discrimination and puts forth a different theory of ECOA liability, asserting that Defendants violated the adverse-action notice requirement of ECOA, 15 U.S.C. § 1691(d)(2), by extending "credit on terms substantially different from that which the consumer sought" and subsequently failing to notify Crawford of these different credit terms within thirty days.

Assuming for the sake of argument that Plaintiff's novel incarnation of her ECOA claim is not precluded by her failure to raise it prior to her cross motion for summary judgment, the Court rejects Plaintiff's motion for summary judgment because

there are material disputes of fact about whether Crawford was extended credit on terms different from those which she sought. Defendants have pointed to factual evidence on the record from which a reasonable fact finder could conclude that Crawford understood the terms on which she was being offered credit and that these terms were not materially different from those discussed with Koller by telephone.  Therefore a reasonable fact finder could conclude there was no "adverse action" of which Defendants were required to notify Crawford.  Plaintiff's motion for summary judgment on her ECOA claim is denied.

### 4.   N.Y. General Business Law § 349 Claims

In addition to her federal statutory claims, Plaintiff also brings claims under N.Y. Gen. Bus. Law § 349 for damages and injunctive relief resulting from Defendants' alleged deceptive business practices.  A plaintiff making a deceptive business practices claim must demonstrate "that the challenged act or practice was consumer-oriented; that it was misleading in a material way; and that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 24-25 (2000).  Plaintiff does not challenge Defendants' assertion that a claim under N.Y. Gen. Bus. Law § 349 requires a showing that the alleged deceptive business practices could harm consumers at large, but instead bases her deceptive business practices claim on "the incredibly reckless . . . functioning of

-29-

Defendants, which recklessness resulted in widespread deceptive
practices such as obtaining signatures under false pretenses;
creating mortgage related documents through forgery to
manufacture a 'closing' and asserting false claims of mortgage,"
among other practices. (Pl.'s Mem. Supp. Mot. Summ. J. 13).
Plaintiff offers no evidence to support her claim that
Defendants engaged in widespread deceptive practices or that
these practices actually injured others, but rather urges the
Court to draw this inference from the lack of documentation
provided about Defendants' policies and procedures.  As
discussed above, no such inference is warranted.  Therefore,
because a reasonable fact finder could conclude that the facts
alleged by Plaintiff constitute at most a single instance of a
deceptive practice, such that these practices were not
"consumer-oriented" as required to make out a valid Gen. Bus.
Law § 349 claim, Plaintiff is not entitled to summary judgment
on this claim.

  **5.   Fraud and Negligent Misrepresentation**

  Plaintiff finally seeks summary judgment on her claims for
fraud and negligent misrepresentation.  Under New York law, a
plaintiff asserting a common-law fraud claim must prove four
elements: (1) a knowing misrepresentation or a material omission
of fact; (2) made for the purpose of inducing the plaintiff's
reliance; (3) reasonable reliance on that the representation;

and (4) a resulting injury. Lama Holding Co. v. Smith Barney,
668 N.E.2d 1370, 1373, 88 N.Y.2d 413, 421 (1996).  Plaintiff's
reliance must be "justifiable" under New York law, and "[w]here
a party has the means to discover the true nature of the
transaction by the exercise of ordinary intelligence, and fails
to make use of those means, [that party] cannot claim
justifiable reliance on [the defendant's misrepresentations."
Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 245 A.D.2d 96,
98-99, 665 N.Y.S.2d 415, 417 (App. Div. 1997).  Under New York
law, a plaintiff asserting a claim of negligent
misrepresentation must produce evidence demonstrating: "(1) an
awareness by the maker of the statement that it is to be used
for a particular purpose; (2) reliance by a known party on the
statement in furtherance of that purpose; and (3) some conduct
by the maker of the statement linking it to the relying party
and evincing its understanding of that reliance." State of Cal.
Pub. Employees' Retirement Sys. v. Shearman & Sterling, 741
N.E.2d 101, 104, 95 N.Y.2d 427, 434 (2000).

Summary judgment is unwarranted with respect to Plaintiff's
fraud and negligent misrepresentation claims because the central
facts relating to both are in dispute.  Defendants contest the
factual claims made by Crawford, and Anthony Decarolis and
Robert Koller have given accounts of the occurrences in late
2004 that differ sharply from those given by Crawford.

According to Koller, he explained the loan to Crawford as a mortgage refinancing rather than a "bridge loan."  This is supported by Crawford's admission during her deposition that she understood that the "bridge loan" would entail Tribeca's payment of her existing mortgages and that Tribeca would have a secured interest in the Piermont Property.  Furthermore, Decarolis stated unequivocally that he did not take part in a scheme to fabricate a mortgage by collecting "specimen signatures" from Crawford, and the allegation that Defendants fraudulently obtained a security interest in her home depends on the veracity of Crawford's account of what transpired at JFK Airport on December 11, 2004.  Therefore, because the central facts giving rise to Plaintiff's fraud and negligent misrepresentation claims are in dispute, drawing all reasonable inferences in favor of Defendants as the non-moving parties, the Court denies Plaintiff's motion for summary judgment on her fraud and negligent misrepresentation claims.

Thus, Plaintiff's motion for summary judgment is denied.

**C.   Defendants' Motions for Summary Judgment**

Defendants argue that they are entitled to judgment as a matter of law with respect to all of Plaintiff's claims due to, among other things, Plaintiff's failure to list any of these claims as "assets" when she filed her 2006 bankruptcy petition. It is "[a] basic tenet of bankruptcy law . . . that all assets

of the debtor, including all pre-petition causes of action
belonging to the debtor, are assets of the bankruptcy estate
that must be scheduled for the benefit of creditors." Kunica v.
St. Jean Fin., Inc., 233 B.R. 46, 52 (S.D.N.Y. 1999) (citing
Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989). See 11
U.S.C. §§ 541, 554(c)-(d).  Therefore, "[c]ourts have held that
because an unscheduled claim remains the property of the
bankruptcy estate, the debtor lacks standing to bring such
claims after emerging from bankruptcy, and the claims must be
dismissed." Kunica, 233 B.R. at 52.  The act of filing a
bankruptcy petition transfers a debtor's assets to the
bankruptcy estate, and these assets remain assets of the
bankruptcy estate unless returned to the debtor by the operation
of law.  Plaintiff unquestionably failed to assert any of these
claims in her 2006 bankruptcy, but now contends that she
nonetheless has standing to assert her claims because the 2006
bankruptcy was dismissed, rather than discharged, and because
Defendants defended similar claims on the merits in the
adversary proceeding in Crawford's 2007 bankruptcy filing.

     In support of her argument that the dismissal of a
bankruptcy petition vests in the debtor all assets of the
bankruptcy estate, including those not scheduled by the debtor,
Plaintiff urges the Court to follow a decision of the U.S.
District Court for the District of New Jersey, Central Jersey

Freightliner, Inc. v. Freightliner Corporation, 987 F. Supp. 289
(D.N.J. 1997), rather than Kunica.   In Central Jersey, the
District of New Jersey held that "a debtor's failure to disclose
[claims] . . . where no plan was confirmed in the debtor's
bankruptcy case" did not preclude that debtor from reasserting
those claims in another forum. 987 F. Supp. at 294.   The
District of New Jersey adopted a plain reading of 11 U.S.C.
§ 349, and reasoned that "dismissal of a bankruptcy case
essentially restores the parties to the position they assumed
prepetition." Id.   However, the District of New Jersey also
recognized that equitable considerations--including the debtor's
conduct during the bankruptcy--could weigh against permitting
the debtor to assert unscheduled claims, and based its holding
in part on the fact that the bankruptcy case at issue "was
voluntarily dismissed six months after filing." Id.   In this
case, by contrast, Plaintiff's 2006 bankruptcy petition was
dismissed because she "created unreasonable delay . . .
prejudicial to creditors in that the debtor . . . failed to
appear at the confirmation hearing scheduled for March 6, 2007
[, and] failed to remain current in proposed plan payments to
the trustee." See Order of Dismissal, In re Linda D. Crawford,
Ch. 13 Case No. 06-22724 (Bankr. S.D.N.Y. Apr. 12, 2007), ECF
No. 12.   Therefore, the reasoning in Central Jersey does not

firmly support Plaintiff's argument that she has standing to
assert the claims in this suit.

Kunica and Central Jersey offer different approaches to the
issue of a former debtor's ability to assert an unscheduled
claim; the former is a rule-based approach primarily concerned
with "protect[ing] creditors from a debtor who may try to hide
assets," Kunica, 233 B.R. at 54, while the latter suggests a
flexible balancing of equitable principles and is concerned with
meaningfully preserving a debtor's "right to amend its schedules
and statements up until confirmation of a plan," Central Jersey,
987 F. Supp at 294.  On the facts of this case, precluding
Plaintiff's claims is warranted under either approach.  Crawford
filed her 2006 bankruptcy petition two days before a scheduled
foreclosure sale of the Piermont Property, and thereby prevented
the foreclosure sale until the S.D.N.Y. Bankruptcy Court
dismissed the petition due to Crawford's failure to comply with
its directives.  Therefore, she obtained a considerable benefit
from the bankruptcy petition which she later failed to pursue.
Plaintiff argues that she might have amended her petition to
include the claims asserted in this action, but her failure to
even appear at a scheduled confirmation hearing for her 2006
bankruptcy petition suggests that Plaintiff had no intention of
disclosing any additional assets in that bankruptcy.  Finally,
the fact that Defendants contested these claims in the 2007

adversary proceeding cannot confer standing on Plaintiff because, as stated above, unscheduled assets can only re-vest in the debtor by the operation of law.

Due to Plaintiff's failure to raise these claims in her 2006 bankruptcy petition, she may not assert them in this action, and therefore Defendants' motions for summary judgment are granted.  In view of this ruling, there is no need to address Defendants' remaining arguments.

### V.  Conclusion

With respect to Plaintiff's cross motion for summary judgment, on the record before the Court, a reasonable finder of fact could hold in favor of Defendant.  Because there are genuine disputes of fact preventing judgment as a matter of law in favor of Plaintiff, Plaintiff's cross motion for summary judgment is DENIED.

With respect to Defendants' motion for summary judgment, because Plaintiff failed to assert any of the claims in this action in her 2006 bankruptcy petition as discussed above, she lacks standing to assert these claims or in the alternative is collaterally estopped from bringing these claims.  As such, there are "no genuine issues of material fact" with respect to Plaintiff's claims, and Defendants are entitled to judgment as a matter of law with respect to all of Plaintiff's claims.

Tribeca's motion for summary judgment is GRANTED, and Franklin's motion for summary judgment is also GRANTED.

Decision on these motions (Docket Nos. 50, 52, 54, 59, and 63) resolves all of the claims in the Amended Complaint. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:     New York, New York
           March 23, 2011

                                        JOHN F. KEENAN
                                   United States District Judge

-37-