```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LINDA D. CRAWFORD,                              |
                                                |
                Plaintiff,                      |        08-CV-6293 (KMW)
                                                |        OPINION & ORDER
        -against-                               |
                                                |
FRANKLIN CREDIT MANAGEMENT                      |
CORPORATION, TRIBECA LENDING                    |
CORP., LENDERS FIRST CHOICE AGENCY,             |
INC.,                                           |
                                                |
                Defendants.                     |
---------------------------------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

      Plaintiff Linda Crawford brought this action alleging that Defendants Franklin Credit Management Corporation and Tribeca Lending Corporation (collectively "Defendants") fraudulently induced her to enter into a predatory lending transaction by fabricating a home loan agreement.  Crawford brought two claims against Defendants, one under state fraud law, and the other under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.  After a four-day trial, the jury returned a unanimous verdict in favor of Defendants on both claims.

      Crawford now seeks an order, pursuant to Rule 50 of the Federal Rules of Civil Procedure, setting aside the jury's verdict as to her TILA claim, and entering judgment in Ms. Crawford's favor.  Alternatively, she seeks a new trial, pursuant to Rule 59.  Additionally, Crawford asserts that the verdict must be set aside, pursuant to Rule 60(b)(3), because it was vitiated by Defendants' fraud, misrepresentation, or misconduct.  For the reasons stated herein, Plaintiff's motion is DENIED.

I.   BACKGROUND

*A.  Factual Background*

In 2000, Crawford purchased a home in the village of Piermont in Rockland County, New York.  Crawford funded the purchase with a mortgage loan from Community Home Mortgage Corporation.  By November 2004, Crawford had defaulted on the mortgage, and Community had commenced a foreclosure action.

The parties agree that in November 2004, a representative of Tribeca, Robert Koller, contacted Crawford to discuss a possible loan.  The type of loan they discussed is in dispute: Crawford claims that Koller offered to help her avoid foreclosure by providing a $35,000 "bridge loan" that would convert to a 30-year mortgage after one year, while Defendants contend that Koller offered a mortgage loan without any "bridge loan" component.

The parties further agree that after speaking with Koller, Crawford attended a meeting at John F. Kennedy International ("JFK") Airport on December 11, 2004.  The nature of that meeting is also in dispute:  Crawford claims that at Koller's request, she met with Tribeca's representative, Anthony Decarolis, merely to provide "specimen signatures," while Defendants contend that Crawford met Decarolis to close on a mortgage loan.

Tribeca subsequently claimed that Crawford had closed on a $504,000 mortgage loan, and demanded corresponding monthly payments, on which she immediately defaulted.  Crawford brought suit against Defendants, alleging that they fabricated the loan agreement using her "specimen signatures," in violation of TILA[1] and state fraud law.

---

[1] "TILA requires that creditors provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights, as well as notice of the borrower's right of rescission."  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 283 (S.D.N.Y. 2011) (Karas, J.) (internal quotation marks omitted).  "TILA was enacted by Congress to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . .'"  *Id.* (quoting 15 U.S.C. § 1601(a)).

*B. Trial Proceedings*

A significant issue at trial involved the documents that made up the loan agreement. Of the thirty-four documents that Defendants claimed Crawford signed during the closing with Decarolis, they offered only three as original documents—the mortgage, the note, and the adjustable rate rider. *See* (Trial Tr. [ECF Nos. 153, 155, 157, 159] at 403) (referencing the thirty-four documents); (Crawford Mem. in Supp. [ECF No. 163] at 2) (noting that Defendants' alleged closing file contained "34 closing documents - 31 of which were copies"). Defendants asserted that the remaining 31 documents, including those documents required by TILA's disclosure provisions, had been lost, and therefore sought to offer into evidence only photocopies of those documents. *See* (Trial Tr. 277–279; 487–88). The Court, over Crawford's objection, allowed the photocopied documents to be received in evidence. *See, e.g.*, (*id.* at 451–52).

During trial, Ms. Crawford testified that she did not sign those loan documents. (*Id.* at 181). She stated that Defendants told her the purpose of her meeting with Decarolis at JFK Airport was solely for her to document and confirm her identity. (*Id.* at 180–81). According to Crawford, only two brief events took place during that meeting: She signed a single piece of paper Decarolis provided to her, and she gave Decarolis a copy of her identification. (*Id.* at 181).

Decarolis testified that his usual procedure for mortgage closings was to provide each loan document, one by one, to the mortgagor, offering an explanation of the document when necessary. (*Id.* at 360–64). He recalled nothing about the alleged closing with Crawford that deviated from his usual procedure. (*Id.* at 365, 369). Decarolis asserted that he did not have Crawford sign a blank piece of paper, and that he had no reason to believe that she had not signed all of the loan documents in question. (*Id.* at 367–68, 372–88). He testified that he did

3

not forge Crawford's signature on any document, nor did he place her signature on any document using a handwriting exemplar. (*Id.* at 371–88).

Andrew Sulner, a forensic document examiner, testified to the authenticity of Crawford's alleged signatures on these documents. He stated that the similarities between the signatures on the loan documents at issue and documents turned over by Crawford as examples of her signature provided "strong, very strong evidence of authenticity," but noted that because much of his analysis involved copies of documents instead of originals, his conclusions could not be definitive. (*Id.* at 421–27).

Melissa Olivera, a foreclosure manager for Franklin Credit, testified that she had personally reviewed Crawford's loan file in 2009, noting that at that time, the file contained original, not photocopied versions of the loan documents. (*Id.* at 450–51). She stated that the loan documents became lost at some point after they were given to Defendants' prior legal counsel, Belkin Burden. (*Id.* at 487–88).

After a four-day trial, the jury returned a verdict in Defendants' favor on both of Crawford's claims. (*Id.* at 626–27).

## II. PROCEDURAL DEFAULT

Crawford moves for judgment as a matter of law ("JMOL"), pursuant to Rule 50 of the Federal Rules of Civil Procedure. Rule 50 states that the motion "may be made at any time *before the case is submitted to the jury*. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2) (emphasis added). "A motion for judgment as a matter of law may also be made after judgment, but only if such a motion has also been made prior to submission of the case to the jury." *Piesco v. Koch*, 12 F.3d 332, 340 (2d Cir. 1993) (citing Fed. R. Civ. P. 50(b)). "The principal purpose of the

requirement that any such motion be made before the case is submitted to the jury is to assure the responding party an opportunity to cure any deficiency in that party's proof." *Lore v. City of Syracuse*, 670 F.3d 127, 152 (2d Cir. 2012) (internal quotation marks omitted). If a party fails to comply with the terms of Rule 50, the motion is typically denied. *See, e.g.*, *Piesco*, 12 F.3d at 340–41.

Here, Crawford failed to make any JMOL motion before the case was submitted to the jury. On January 28, 2015, the Court had a brief exchange with Crawford, acknowledging her previously-stated plan to move for JMOL after Defendants rested, and requiring Crawford to make that motion by January 29, 2015. (Trial Tr. 497). Crawford did not file a JMOL motion until several weeks later, on February 18, 2015—long after the jury had decided the case.[2] Mere mention that a party would be filing a JMOL motion in the future is insufficient to preserve the opportunity to later renew such a motion pursuant to Rule 50(b). *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998) ("[A]lthough a motion for JMOL may be 'renew[ed]' after the jury returns its verdict, it may be renewed only on grounds that were specifically articulated before submission of the case to the jury." (citations omitted) (quoting Fed. R. Civ. P. 50(b))).

Although courts may hear an untimely Rule 50 motion if it "is required in order to prevent manifest injustice," *Lore*, 670 F.3d at 153, no such manifest injustice exists here. As will be discussed more fully below, none of Crawford's arguments in support of her motion is

---

[2] In a footnote to her Memorandum of Law in Support of Plaintiff's Motion for Post-Trial Relief, Crawford seems to imply that the reason she did not file a motion during trial was because the jury decided the case on January 29, 2015, halfway through the additional day that the Court provided Crawford to file the motion. (Crawford Mem. in Supp. 3 n.1). Although this might provide Crawford with sufficient reason for filing her motion on January 29, 2015, despite the fact that the case had already been submitted to the jury by that point, it does not give Crawford license to file a motion several weeks later.

persuasive. Accordingly, the Court holds that Crawford failed to comply with the terms of Rule 50(a)(2), and denies Crawford's Rule 50 motion.[3]

## III. JUDGMENT AS A MATTER OF LAW

Even assuming, *arguendo*, that Crawford had not procedurally defaulted, Crawford's JMOL motion must still be denied.

Crawford makes two claims in support of her motion. First, she claims that the loan documents submitted to the jury at trial were inadmissible, and that she was irreparably prejudiced by their admission. Second, she claims that the jury verdict was wholly without legal support. The Court finds neither claim persuasive.

*A. The Loan Documents Were Admissible*

Crawford argues the loan documents at issue in this case (1) were inadmissible as hearsay, (2) violated the best evidence rule, and (3) were not properly authenticated.

1. The Loan Documents Offered by Defendants Were Not Hearsay

The Court rejects Crawford's hearsay challenge because Defendants did not offer the loan documents for their truth, and therefore, the documents were not hearsay.

"If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note; *see also United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991). Accordingly, "verbal acts that give rise to legal consequences" are typically not considered hearsay. *Id.* at 486–87; *see also Liani v. Baker*, No. 09-CV-2651, 2010 WL 2653392,

---

[3] Crawford claims that Defendants did not timely file opposition to her JMOL motion and that the Court should not credit Defendants' response to Crawford's motion because of this fact. *See* (Crawford Ltr. [ECF No. 164] at 1). However, Crawford is mistaken. Defendants complied with S.D.N.Y. Local Civil Rules 6.1(b) and 6.4 and Federal Rule of Civil Procedure 6, and timely submitted their opposition to Crawford's motion. *See* (Franklin Ltr. [ECF No. 167] at 1).

at *6 n.11 (E.D.N.Y. June 28, 2010) ("[L]egally operative statements are not hearsay under Rule 801."); Fed. R. Evid. 801(c) advisory committee's note ("The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties . . . ."). Such verbal acts include statements that allegedly accept a contract. *See Porter v. United States*, No. 13-CV-7332, 2015 WL 1004953, at *1 n.2 (S.D.N.Y. Mar. 3, 2015) (Buchwald, J.) ("[A] contract is 'a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay.'" (quoting *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992))); *see also Rancho Mountain Properties, Inc. v. Gray*, No. 11-CV-0358, 2012 WL 1192755, at *4 (S.D. Cal. Apr. 9, 2012) (holding that loan documents are "verbal acts" and "therefore need not fall under an exception to hearsay in order to be admitted into evidence"); *Ryan v. State*, No. 91-CV-3725, 1999 WL 59982, at *3 (N.D. Ill. Feb. 3, 1999) ("Nor is the loan agreement hearsay—it is a contract with legal significance independent of the truth of any statement in it."); *In re Higadera*, No. 11-11315 T13, 2012 WL 5828624, at *6 (Bankr. D.N.M. Nov. 16, 2012) ("The key loan and/or loan purchase documents are not hearsay, but constitute acts of independent legal significance.").

Here, Defendants offered the loan documents not for the truth of the terms contained within the documents, but to establish that Crawford had entered into a contract with Defendants. Although Crawford disputes that she ever entered into the contract, the extent to which the jury found the loan documents—and more specifically, Crawford's alleged signature on them—credible goes to the weight of the evidence, rather than to its admissibility. *See Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F. Supp. 2d 347, 353 (E.D.N.Y. 2012) ("Issues of credibility go to the weight, not admissibility or discoverability of testimony." (citing *Washington v. Texas*, 388 U.S. 14 (1967))); *People v. Gruttola*, 43 N.Y.2d 116, 122 (1977) ("Issues of credibility are

primarily for the jury . . . ."); *Hassan v. Maersk Lines, Ltd.*, No. CV 2003-5443, 2005 WL 5712849, at *3 n.2 (E.D.N.Y. Apr. 15, 2005) ("[T]he credibility of the declarants goes to the weight of the evidence not its admissibility."); c*f. Silverstein v. Penguin Putnam, Inc.*, No. 01-CV-309, 2006 WL 2506363, at *2 (S.D.N.Y. Aug. 29, 2006) (Keenan, J.) ("[I]nconsistencies in witness testimony go to weight, not admissibility." (internal quotation marks omitted)).

    2.   Admission of the Loan Documents Did Not Violate the Best Evidence Rule

Rule 1002 of the Federal Rules of Evidence, often referred to as the Best Evidence Rule, states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Rule 1004 provides such an exception and notes that an original is not required if, *inter alia*, "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a).

Defendants sought to introduce at trial 31 non-original documents; these documents are admissible only if they satisfy the requirements of Rule 1004. To satisfy Rule 1004, "'[t]he party seeking to prove the contents of the writing must establish a proper excuse for the non-production of the document and that the original did exist.'" *Bandler v. BPCM NYC, Ltd.*, No. 12-CV-3512, 2014 WL 5038407 at *8 (S.D.N.Y. Sept. 29, 2014) (Gardephe, J.) (quoting *A.F.L. Falck, S.p.A. v. E.A. Karay Co., Inc.*, 722 F. Supp. 12, 16 (S.D.N.Y.1989) (Sweet, J.)). Defendants must meet this burden by a preponderance of the evidence. *See Int'l Bus. Machs. Corp. v. BGC Partners, Inc.*, No. 10-CV-128, 2013 WL 1775367, at *7 (S.D.N.Y. Apr. 25, 2013) (Crotty, J.) ("[C]ases assessing secondary evidence of the existence or terms of a missing contract have found 'no reason to depart from the almost universally accepted general rule that the burden of proof . . . should be by a preponderance of the evidence.'" (quoting *Glew v. Cigna Grp. Ins.*, 590 F. Supp. 2d 395, 412 (E.D.N.Y. 2008))).

Crawford claims that Defendants have failed to meet this burden because "[t]hey proffered no evidence that the originals existed in 2004," and because "they proffered *no* excuse, let alone a 'proper excuse for non-production.'"  (Crawford Reply Mem. [ECF No. 168] at 3) (emphasis in original).  The Court disagrees.

As an initial matter, for the purposes of the Best Evidence Rule, Defendants did not need to prove that the original documents existed in 2004; they simply needed to prove that the originals existed at some point.  If Defendants had offered original documents rather than photocopied ones, those document would be admissible under the Best Evidence Rule, regardless of whether they had existed in 2004 or at some later point.  The time at which the documents existed would go to the weight of the evidence, or perhaps to their authenticity, not to their admissibility, and would be an issue of fact for the jury to determine.

Defendants have proved by a preponderance of the evidence that the original documents existed.  First, they offered thirty-four loan documents in total, three of which were originals.  *See* (Trial Tr. 451–477).  Each of these documents, originals and photocopies alike, bore a signature that Defendants claimed was Crawford's.  Defendants offered the testimony of Andrew Sulner, a forensic handwriting examiner, who testified that the various signatures were very similar and appeared authentic.  (*Id.* at 421–22).  He also testified that it did not appear that Crawford's signature had been mechanically or digitally added to the photocopied documents, suggesting that the photocopied documents were as legitimate as the original ones.  (*Id.* at 422–25).  Additionally, Anthony Decarolis testified that he remembered meeting with Crawford to perform a loan closing and that he had no reason to believe that Crawford had not signed each of the documents in question during that closing.  (*Id.* at 372–88).  Finally, Melissa Olivera testified that she had reviewed Crawford's loan file in 2009, which included original versions of each

9

document, and that there was nothing "out of the ordinary" about the documents. (*Id.* at 451, 487).

Defendants have also established a proper reason for not producing the originals. Olivera testified that she gave the thirty-four original loan documents to Defendants' prior legal counsel, Belkin Burden, in 2009, and that at some point, Burden returned the three currently-original documents, but that Burden stated that the other thirty-one were lost. (*Id.* at 487–88). Rule 1004 specifically states that secondary evidence is admissible if the original was lost, so long as it was not a result of bad faith. *See* Fed. R. Evid. 1004(a). Crawford has not offered any concrete allegation of bad faith on the part of Defendants, let alone proved bad faith. Therefore, Defendants' contention that their prior legal counsel lost the thirty-one currently-missing original documents is a sufficient reason for not producing the originals.

### 3. The Loan Documents Were Properly Authenticated

Crawford further claims that the loan documents were inadmissible because they were not properly authenticated. According to Rule 901 of the Federal Rules of Evidence, a party must authenticate proffered evidence by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." "Rule 901 does not erect a particularly high hurdle," and is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotation marks omitted); *see also Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391–92 (S.D.N.Y. 2005) (Marerro, J.) ("'[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for

authentication, and hence for admissibility, is one of reasonable likelihood.'" (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999))).

Defendants have offered enough evidence to permit a reasonable to find the documents authentic.  Olivera testified at trial that she had reviewed the original loan documents in 2009, and that the loan documents offered as evidence by Defendants at trial were the same documents, or accurate copies of the documents, she had reviewed previously.  (Trial Tr. 449–84). Additionally, Sulner testified that Crawford's alleged signatures on these documents provided "strong, very strong evidence of authenticity." (*Id.* at 421–22).  Based on the testimony of these witnesses, a reasonable juror could have concluded that these documents were authentic copies of the originals.  Accordingly, the loan documents met the standard set forth in Rule 901, and were properly admitted.  Thus, the admission of the loan documents does not support Crawford's JMOL motion.

### B.  The Jury Had a Sufficient Evidentiary Basis to Find in Favor of Defendants

Crawford argues that the jury's verdict in Defendants' favor on Crawford's TILA claim was wholly without legal support and for that reason, judgment should be entered in Crawford's favor as a matter of law.

Rule 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party." Fed. R. Civ. P. 50(a)(1)(A).  In deciding the Rule 50 motion, the court must "view the evidence in the light most favorable to the non-movant, deferring to the jury's assessment of the evidence and all reasonable inferences the jurors could draw from the evidence." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001).  "Judgment as a matter of law is inappropriate unless: '(1) there is

such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Id.* (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)).

Crawford has failed to show that the jury lacked a legally sufficient evidentiary basis to find for Defendants on her TILA claim.

Defendants offered both witness testimony and documentary evidence that supported the jury's verdict.  First, as discussed above, Anthony Decarolis testified that his typical practice for mortgage closings was to receive a set of loan documents from the mortgagee prior to the closing, and then to provide each of those documents to the mortgagor during the closing, one by one. (Trial Tr. 360–64).  Decarolis specifically testified that it was his practice to provide the mortgagor with the various disclosures required by TILA, and stated that he had no reason to believe that he had deviated from that practice with Crawford.  (*Id.* at 373–75).  He also testified that he did not forge Crawford's signature on any loan document.  (*Id.* at 371–88). Viewing this evidence in the light most favorable to Defendants, the jury could have concluded from Decarolis's testimony that Defendants provided Decarolis with the necessary TILA disclosures, and that Decarolis then provided them to Crawford, who signed them.

Crawford argues that the jury could not have, or should not have, credited Decarolis's testimony, because he was unable to state with certainty that he provided the TILA disclosures to Crawford.  *See, e.g.*, (Crawford Mem. in Supp. 25); (Crawford Reply Mem. 7–8).  However, one of the jury's roles is to judge the credibility of a party's witnesses, *see United States v. Shulman*, 624 F.2d 384, 388 (2d Cir. 1980) ("[T]he resolution of issues of credibility is exclusively the

province of the jury."), and it was reasonable for the jury to have found Decarolis credible and to have drawn conclusions favorable to Defendants in consequence.

Second, Melissa Olivera testified that she had reviewed Crawford's loan file in 2009, and that the file included original versions of the necessary TILA disclosure forms. (Trial Tr. 450–51, 464). She stated that each of these forms included Crawford's signature. (*Id.* at 449–84). Viewed in the light most favorable to Defendants, the jury could reasonably have concluded from Olivera's testimony that Crawford received these TILA disclosure forms during the alleged mortgage closing.

Third, Defendants offered the loan documents at issue as evidence of Defendants' compliance with the applicable TILA provisions. (*Id.* at 451–77). In addition, they offered the testimony of Andrew Sulner, who stated that the signatures on the loan documents—alleged to be that of Crawford's—were "strong, very strong evidence of authenticity." (*Id.* at 421–22). Viewed in the light most favorable to Defendants, the jury could have concluded that the loan documents were authentic and convincing evidence of Defendants' compliance with TILA's disclosure provisions.

Crawford has failed to show that the jury lacked a legally sufficient evidentiary basis to find for Defendants on her TILA claim. Therefore, even if she had not procedurally defaulted, the Court would still deny her Rule 50 motion.

## IV.     MOTION FOR A NEW TRIAL

Crawford moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. She argues that the jury verdict is a "serious miscarriage of justice," requiring the Court to grant Crawford a new trial. (Crawford Mem. in Supp. 28–29).

A district court may grant a motion for a new trial only if it "determines that, in its independent judgment, 'the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice.'" *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)).  However, a Rule 59 motion is "less onerous [than a Rule 50 motion] in two ways: first, '[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.'  Second, in deciding a Rule 59 motion 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 796 F. Supp. 2d 396, 405–06 (E.D.N.Y. 2011) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)).

The jury's verdict suggests that the jury found Defendants' witnesses, discussed in Part III above, sufficiently credible, or Crawford's witnesses sufficiently incredible, to warrant a verdict in Defendants' favor.  "A jury's credibility assessments are entitled to deference, and . . . '[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.'" *United States v. Landau*, 155 F.3d 93, 104–05 (2d Cir. 1998) (citations omitted) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).  Having independently assessed the evidence, the Court holds that the jury's verdict is not "seriously erroneous," and therefore, the Court defers to the jury's credibility assessment.

Consequently, Crawford's motion for a new trial, pursuant to Rule 59, is denied.

## V.     ADDITIONAL RELIEF

Crawford moves for additional relief, pursuant to Rule 60(b)(3), which allows a court to relieve a party from a final judgment on the basis of "fraud . . . misrepresentation, or misconduct

by an opposing party." "[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. N. Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).

Crawford's argument in support of her Rule 60(b)(3) motion appears to be that Defendants fraudulently refused to provide the original versions of most of the loan documents at issue in the case, and that doing so prevented Crawford from fully presenting her case. *See* (Crawford Reply Mem. 9–10). However, the only "proof" Crawford has offered of this allegedly fraudulent conduct is what Crawford characterizes as Defendants' inconsistent statements concerning the existence of these original documents. (*Id.*) Even if these statements were truly inconsistent, such inconsistency is not sufficient evidence of fraud to meet the "clear and convincing" standard Rule 60(b)(3) requires. Accordingly, Crawford's motion for additional relief pursuant to Rule 60(b)(3) is denied.

## VI.   CONCLUSION

For the reasons stated above, the Court DENIES Crawford's motion. This Opinion closes ECF No. 161.

SO ORDERED.

Dated: New York, New York
       March 26, 2015

/s/<br>Kimba M. Wood<br>United States District Judge